IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-14-0411 |
| BROOKE LUNN, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Defendant Brooke Lunn ("Lunn") is serving a 144-month sentence arising from her participation in a large-scale cocaine trafficking organization. (Judgment 1–2, ECF No. 248.) On May 29, 2018, she pleaded guilty to one count of Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846. (Superseding Indictment 1–2, ECF No. 97; Rearraignment, ECF No. 195.) She is currently serving her sentence in FCP Alderson, West Virginia. Now pending are Lunn's *Pro Se* Motion for Sentence Reduction (Lunn 2019 Mot., ECF No. 399) and her Motion for Sentence Reduction/Compassionate Release (Lunn 2021 Mot., ECF No. 524 *SEALED*). Lunn's March 2019 *Pro Se* Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2) argues that the Court should grant a minor role reduction under Section 3B1.2 of the advisory United States Sentencing Guidelines. (Lunn 2019 Mot. 2–3.) Her December 2021 Motion for Sentence Reduction/Compassionate Release alleges that her health conditions constitute an "extraordinary and compelling reason" for compassionate release, compounded by the heightened risk of contracting COVID-19 in Bureau of Prison (BOP) facilities. (Lunn 2021 Mot. 1; Lunn 2021 Mem. 9–11, ECF No. 524-

1

1 *SEALED*.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Lunn's Motions for Sentence Reduction and Compassionate Release (ECF Nos. 399, 524) are **DENIED**.

## BACKGROUND

Lunn served as a courier for a large-scale cocaine trafficking organization, transporting vehicles containing money and cocaine from Baltimore, Maryland, to Houston, Texas, from approximately September 2012 through October 2014. (Presentence Investigation Report ("PSR") ¶¶ 4, 6, 10, ECF No. 229.) In September 2012, Texas state police arrested Lunn after searching the courier vehicle she was operating and seized approximately 30 kilograms of cocaine. (*Id.* at ¶ 6.) She was released on bond and returned to Maryland, where she continued her involvement with the drug trafficking organization. (*Id.* at ¶¶ 6, 8–10.) Between August 2013 and October 2014, Lunn made approximately thirty trips from Baltimore to Houston and back on behalf of the drug trafficking organization. (*Id.* at ¶ 9.)

On September 3, 2014, a federal grand jury indicted Brooke Lunn and eight other individuals for their involvement in the drug trafficking organization. (Indictment 1, ECF No. 1 *SEALED*.) Federal agents executed a search and seizure warrant on Lunn's courier vehicle in October 2014 and seized approximately 27 kilograms of cocaine from the vehicle. (PSR ¶ 10.) On February 4, 2015, a federal grand jury issued a Superseding Indictment charging Lunn with one count of Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846. (Superseding Indictment 1–2.) Lunn pleaded guilty without a written plea agreement on May 28, 2015. (Rearraignment.) Consequently, this Court sentenced

her to 144 months' imprisonment followed by a five-year term of supervised release. (Judgment 1–3.)

On March 25, 2019, Lunn filed *pro se* a Motion to Reduce Sentence based on the November 2015 amendment to Section 3B1.2 of the United States Sentencing Guidelines regarding minor role reductions. (ECF No. 399.) Lunn also filed an Emergency Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on June 25, 2020. (ECF No. 435.) In response to the COVID-19 pandemic, in July 2020, the BOP placed Lunn on home confinement with the Baltimore Volunteers of America pursuant to its authority under the CARES Act. (*See* Mot. Dismiss 1, ECF No. 454.) Accordingly, Lunn moved to dismiss the pending motion for compassionate release, and the Court subsequently dismissed that motion. (*Id.*; Dismissal Ord., ECF No. 455.) In August 2021, Lunn submitted to a routine drug test and tested positive for marijuana, in violation of the terms of her home confinement. (BOP Records 2, ECF. No. 524-2 *SEALED*.) At a disciplinary hearing, BOP found Lunn guilty of using an illegal substance, revoked her home confinement, and remanded her to custody at FPC Alderson. (*Id.* at 3–5.) On December 15, 2021, Lunn filed a new Motion for Sentence Reduction/Compassionate Release pursuant to 3582(c)(1)(A)(i). (ECF No. 524 *SEALED*.) Lunn's 2019 and 2021 motions remain pending.

## ANALYSIS

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the BOP with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act,

defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The Act permits a defendant to seek a sentence reduction after she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

## I.   Administrative Exhaustion Requirements

Lunn has two outstanding motions pursuant to 18 U.S.C. § 3582: (1) her March 2019 Motion for Sentence Reduction (ECF No. 399) and (2) her December 2021 Motion for Sentence Reduction/Compassionate Release (ECF No. 524 *SEALED*). As to the first motion, Lunn has provided no evidence to show that she exhausted her administrative rights. However, the Government neither responded to that motion nor argued that Lunn failed to exhaust her administrative remedies. Accordingly, the issue of administrative exhaustion as to Lunn's March 2019 motion is waived, and this Court shall consider the merits of that motion. *See United States v. Muhammad*, 16 F. 4th 126, 129 (4th Cir. 2021) ("Because the [exhaustion] requirement is not jurisdictional, it may be waived or forfeited.").

Lunn satisfied the preconditions for filing her 2021 motion. On September 11, 2021, Lunn submitted a letter to the warden of FPC Alderson, requesting compassionate release on the same grounds alleged in this motion. (*See* Letter to Warden, ECF No. 524-4 *SEALED*.)

On October 7, 2021, the warden denied Lunn's request. (Warden Response, ECF No. 528-6 *SEALED*.) Therefore, Lunn exhausted her administrative remedies, and the Court has authority to consider her motion. *See* 18 U.S.C. § 3582(c)(1)(A).

## II.     Minor Role Reduction

In support of her March 2019 Motion for Sentence Reduction, Lunn argues that she should be granted a minor role reduction pursuant to Amendment 794 to Section 3B1.2 of the United States Sentencing Guidelines.[1] (Lunn 2019 Mot. 2–3.) As amended, U.S.S.G. § 3B1.2 permits sentencing courts to provide a "mitigating role" or "minor role" adjustment to "low-level offenders" without a "proprietary interest in the criminal activity." U.S.S.G. App. C. Amend. 794. (Nov. 2015).[2] Minor role reductions may be warranted in situations where the defendant was "less culpable than most other participants in the criminal activity." U.S.S.G § 3B1.2(b) cmt. n.3(A). Amendment 794 provides that, in making this determination, "the defendant is to be compared with the other participants in the crime, not with a hypothetical average participant." *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016) (quoting U.S.S.G. App. C. Amend. 794) (internal quotation marks omitted).

Amendment 794 is not among the listed Guideline Amendments that the Commission has made retroactively applicable to defendants on collateral review. *See* U.S.S.G. § 1B1.10.

---

[1] Lunn also made this argument in a Motion to Vacate, Set Aside, or Correct Sentence filed pursuant to 28 U.S.C. § 2255 on September 6, 2016. (ECF No. 354.) In that motion, Lunn requested that the Court grant her a minor role reduction under Amendment 794. (*Id.* at 5, 8–12.) Prior to the Fourth Circuit's *McCoy* decision, this Court refused to retroactively apply Amendment 794 and denied Lunn's motion on that ground. (ECF No. 382.) However, in its Memorandum Order, this Court noted that "even if Amendment 794 was retroactively applicable . . . Petitioner would not qualify" for a minor role adjustment due to the "essential role" she played in the cocaine trafficking organization. (*Id.* at 3.)
[2] The United States Sentencing Commission issued this amendment upon a finding that minor role reductions have been "applied inconsistently and more sparingly than the Commission intended." *United States v. Quintero-Leyva*, 823 F.3d 519, 521 (9th Cir. 2016).

5

However, the court need not constrain its consideration of a defendant-filed § 3582 motion to the Sentencing Commission's guidelines. *See United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (holding that there is "no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A) . . . ."). Rather, the court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (internal quotation marks omitted).

A court's inquiry as to whether an individual qualifies for a minor role reduction "should be fact-specific and based on the totality of circumstances . . . ." *United States v. Valle-Barrera*, 729 F. App'x 233, 235 (4th Cir. 2018) (citing U.S.S.G. § 3B1.2 cmt. n.3(C)). In *United States v. Guerrero-Deleon*, 713 F. App'x 163 (4th Cir. 2017), the Fourth Circuit upheld a district court's refusal to grant a convicted drug courier a minor role reduction at sentencing. 713 F. App'x at 167. The Court noted that any mitigating role reduction is "not automatically awarded to the least culpable conspirator," but is granted at the discretion of the court based on an analysis of the facts of the case. *Id.* at 166 (quoting *Unites States v. Hassan*, 742 F.3d 104, 150 (4th Cir. 2014)) (internal quotation marks omitted). The Court concluded:

> [T]here is no per se courier entitlement to section 3B1.2 minor-role reductions. The relevant question is . . . whether a given courier played a minor role relative to his coconspirators. Indeed, couriers are often essential to drug conspiracies. They participate directly in the exchange of drugs for money and are the means by which those drugs move from distributor to customer. *See United States v. Self*, 681 F.3d 190, 201 (3d Cir. 2012).

*Id.* The defendant in *Guerrero-Deleon* knew he was involved in a drug transaction, understood the scope of the conspiracy, and was paid for his involvement. *Id.* The court concluded these characteristics indicate more than just a minor role. *Id.*

Lunn argues that she qualifies for a minor role reduction because she was merely a courier for the drug trafficking organization. She notes that she was not involved in the planning or organization of the trafficking operation, that she did not own the drugs she transported or the vehicle she drove, and that she did not load or unload the vehicles with cocaine or money. (Lunn 2019 Mot. 2–3.) However, like the defendant in *Guerrero-Deleon,* Lunn exhibited significant knowledge of and engagement in the operations of the drug trafficking organization. Lunn knew she was transporting large quantities of cocaine and money, having made approximately 30 trips to Houston between August 2013 and October 2014 "to delivery money and return to Baltimore with kilogram quantity loads of cocaine." (PSR ¶ 9.) She also admitted that she made as much as $ 4,000.00 on a single trip, and that she was involved in the organization for many years. (*Id.* ¶¶ 4, 6, 10; Sentencing Mem. 17 n.3, ECF No. 244.) None of these facts suggest that Lunn's role with the drug trafficking organization qualifies as a "minor role" under the United States Sentencing Guidelines.

Accordingly, this Court hereby **DENIES** Lunn's 2019 Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2) (ECF No. 399).

### III.   Motion for Compassionate Release

Lunn's December 2021 Motion for Sentence Reduction/Compassionate Release contends that her various health conditions qualify as an "extraordinary and compelling reason" for a sentence reduction under 18 U.S.C. §3582(c)(1)(A). (Lunn 2021 Mem. 9–11.) Specifically, she alleges that her health condition put her at risk of serious illness if she were to contract COVID-19 while incarcerated. (*Id.*) Although these health conditions constitute "extraordinary and compelling" reasons to consider Lunn's motion, this Court's individualized

7

assessment of Lunn's case under 18 U.S.C. § 3553(a) does not support granting compassionate release or a sentence reduction. For the following reasons, this Court denies Lunn's December 2021 Motion for Compassionate Release.

        A. <u>Extraordinary and Compelling Reasons</u>

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Similarly, a defendant who is "(i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," faces extraordinary and compelling circumstances that may justify release. U.S.S.G. § 1B1.13 cmt. n.1(B). Finally, the Commission has authorized BOP to identify extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's guidelines nor BOP's regulations constrain this Court's analysis of a compassionate release motion filed by a defendant. *McCoy*, 981 F.3d at 281 (holding that U.S.S.G. § 1B1.13 is not an "applicable policy statement" for compassionate release motions filed by a defendant in the wake of the First Step Act). As Judge Blake of this Court has recognized, the First Step Act embodies Congress's

intent to reduce BOP's authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020); accord *McCoy*, 981 F.3d at 281 (holding that "the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling'") (quoting *United States v. Brooker*, 976 F.3d 234, 234 (2d Cir. 2020)). Exercising that discretion, this Court has determined that a heightened susceptibility to COVID-19 may present extraordinary and compelling reasons for a sentence reduction. *See, e.g.*, *United States v. Hurtt*, JKB-14-0479, 2020 WL 3639987, at *1 (D. Md. July 6, 2020).

Lunn contends that she suffers from various health conditions that qualify as extraordinary and compelling reasons warranting compassionate release during the ongoing COVID-19 pandemic. (Lunn 2021 Mem. 9–11.) Lunn is 55 years old and suffers from obesity, hypertension, Type II diabetes, and asthma, all of which she argues place her at a heightened risk of becoming seriously ill from COVID-19. (*Id.* at 6–11.) However, she is fully vaccinated, having received two doses of the Pfizer-BioTech vaccine. (*Id.* at 5–6.)

The United States Centers for Disease Control and Prevention ("CDC") has identified hypertension, diabetes, obesity, and moderate-to-severe asthma as conditions that place individuals diagnosed with such conditions at a higher risk for severe illness from COVID-19. *See People with Certain Medical Conditions, Ctrs. For Disease Control and Prevention*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

medical-conditions.html (last updated May 2, 2022).[3] Although the Government notes that Lunn is fully vaccinated and is regularly tested for COVID-19, "the fact of vaccination does not defeat every underlying health condition that might otherwise render an individual eligible for compassionate release." *United States v. Moore*, No. ELH-18-431, 2022 WL 137865, at *13 (D. Md. Jan. 14, 2022). As of May 15, 2022, CDC reports showed that vaccinated individuals are still at significant risk of contracting COVID-19, with a rate of approximately 394 COVID-19 cases per 100,000 people for unvaccinated persons and approximately 185 cases for vaccinated individuals. *COVID Data Tracker: Rates of COVID-19 Cases and Deaths by Vaccinations Status*, https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status (last updated May 21, 2022).

The Government highlights BOP's efforts to maintain safe and healthy conditions in facilities and to administer vaccines to staff members. (Gov't Opp. to Lunn 2021 Mot. 14–18, ECF No. 528 *SEALED*.) However, FPC Alderson is currently operating at Operational Level 3—a set of infection prevention procedures that are imposed when a facility's medical isolation rate is greater than 7%, its vaccination rate is less than 50%, or its community transmission rate is more than 100 per 100,000 over the last seven days. Fed. Bureau of Prisons, *COVID-19: Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited June 24, 2022). A Level 3 designation requires the facility to make intense modifications to its operating procedures to mitigate the risk and spread of COVID-19. *Id.* Since the onset of the pandemic, 233 inmates and 73 correctional staff at FPC Alderson have contracted COVID-

---

[3] Although some of the COVID-19 related statistics cited in this section were not introduced by the parties, this Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

10

19 and subsequently recovered. *Id.* Two FPC Alderson inmates have died due to COVID-19. *Id.*

The sum of these considerations is that there remains a significant risk of contracting COVID-19 at FCP Alderson, that Lunn's comorbidities increase her risk of severe illness if she were to contract COVID-19, and that her vaccination does not sufficiently reduce this risk so as to render it insignificant. Accordingly, this Court concludes that Lunn has presented "extraordinary and compelling reasons" that could warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

B. 18 U.S.C. § 3553(a) Factors

As with any compassionate release motion, a court must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction. *McCoy*, 981 F.3d at 286. These factors require this Court to consider: (1) Lunn's personal history and characteristics; (2) her sentence relative to the nature and seriousness of her offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); *Bryant*, 2020 WL 2085471 at *4. On balance, these factors do not justify a sentence reduction or compassionate release in this case.

Lunn has not been convicted of a violent crime and there is no record of her engaging in any violent behaviors since her arrest. (*See* BOP Records 2–7, 9.) Until her infraction for marijuana use, Lunn exhibited success while on home confinement, during which she received

11

substance abuse treatment and mental health care and acquired part-time employment. (*Id.*) However, the nature and seriousness of Lunn's offense, and well as her history, weigh heavily against this Court granting a sentence reduction or compassionate release. In September 2012, Texas State Police arrested Lunn after searching her courier vehicle and seizing approximately 30 kilograms of cocaine. (PSR ¶ 6.) Following this arrest, Lunn continued to serve as a courier for the drug trafficking organization. (*Id.* at ¶¶ 6, 8–10.) Between August 2013 and October 2014, Lunn made approximately 30 trips between Baltimore and Houston, transporting "kilogram quantity loads of cocaine." (*Id.* at ¶ 10.) During this time frame, the drug trafficking organization with which Lunn was involved trafficked at least 750 kilograms of cocaine between Maryland and Texas. (*Id.*) Lunn was therefore involved in trafficking massive volumes of cocaine across state lines, and continued to do so even while she was pending trial for her 2012 arrest in Texas. (*Id.*)

The Court considered these facts when Lunn was initially sentenced, and they remain relevant to the instant motion. Although this Court recognizes Lunn's relatively clean post-arrest record, and the challenges posed by her health conditions, the nature and circumstances of her offense outweigh these considerations. To grant a sentence reduction or compassionate release for an individual who played a critical role in a large-scale cocaine trafficking operation would work against the interests of deterrence and undermine the seriousness of Lunn's offense. Indeed, when given the earlier opportunity for home detention, she once more became involved with narcotics. For these reasons, this Court finds that neither compassionate release nor a sentence reduction is warranted.

## CONCLUSION

For the reasons stated above, it is HEREBY ORDERED this 28th day of June, 2022, that Defendant Brooke Lunn's Motions for Sentence Reduction and Compassionate Release (ECF Nos. 399, 524) are **DENIED.**

                                                                                _____/s/_____
                                                                                 Richard D. Bennett
                                                                                 United States District Judge